BALDOCK, J., Circuit Judge,
Concurring.
I concur fully in parts I, U.A., II.A.1., U.A.2., II.B., and III of the Court’s opinion. I do not, however, join part II.A.3. of the opinion. Unlike the Court, I find it unnecessary to delve into the arduous task of interpreting 36 C.F.R. § 219.19 (1999).[1] As the Court correctly explains, “any projects undertaken by the Forest Service in the Fishlake National Forest must be consistent with the Fishlake Forest Plan.” (Court’s Op. at 3). The Fishlake Forest *1233 Plan requires the collection of quantitative data to fulfill its MIS monitoring requirements. (2 AR Doc. 544a V-l to V-3, V-6; Court’s Op. at 16 n. 5). The majority correctly concludes the Forest Service collected such quantitative data with respect to the northern goshawk and Bonneville cutthroat trout. The majority also correctly explains a review of the administrative record does not reveal any quantitative data with respect to the southwestern willow flycatcher, sage grouse, sage nester, or cavity nesters.[2] Because the Forest Service failed to comply with the Fishlake Forest Plan, I would hold the Forest Service’s authorization of the Monroe Project was contrary to law. See 5 U.S.C. § 706(2)(A); 16 U.S.C. § 1604(i).

. Our sister circuits have disagreed on the amount of analysis the Forest Service must perform in order to satisfy its duties under § 219.19. The Ninth Circuit, for example, held the Forest Service satisfied its management indicator species monitoring responsibilities when it conducted a "habitat viability analysis”; that is, when it "estimated the effects of the alternatives [proposed for a project] on the population of the management indicator species by analyzing the amount of the species’ habitat that would be reduced by each alternative.” Inland Empire Pub. Lands Council v. United States Forest Serv., 88 F.3d 754, 763 (9th Cir.1996) (emphasis added); see also Ind. Forest Alliance, Inc. v. United States Forest Serv., 325 F.3d 851, 864 (7th Cir.2003) (holding the Forest Service’s use of "habitat” as a proxy for actual population data was reasonable because the forest plan only required the agency to monitor population "trends.”). The Eleventh Circuit, however, has held that a habitat viability analysis does not satisfy the language of § 219.19. Sierra Club v. Martin, 168 F.3d 1, 7 (11th Cir.1999). The Eleventh Circuit specifically rejected the Ninth Circuit’s habitat analysis approach and held the Forest Service was required to gather quantitative data on management indicator species. Id.; see also Utah Envtl. Congress v. Zieroth, 190 F.Supp.2d 1265, 1271-72 (D.Utah 2002) (holding forest service must obtain quantitative population data); Forest Guardians v. United States Forest Serv., 180 F.Supp.2d 1273, 1279 (D.N.M.2001) (same). Moreover, while the Court’s interpretation of § 219.19 is important to the resolution of the *1233 case at hand, the Forest Service’s adoption of new planning regulations effectively moots the issue in future cases. See 36 C.F.R. §§ 219.19, 219.20(a)(ii), 219.26 (2003); see also 64 Fed.Reg. 54,074 at 54,088 (1999) (explaining the new planning regulations have not adopted the substantially criticized concept of management indicator species).

. As the Court explains, the one possible exception is a map in the administrative record regarding the three-toed woodpecker (a cavity nester). (5 AR at 2234). The map, however, contains no quantitative data. Furthermore, the map is unclear as to whether it represents actual woodpecker sightings or only sightings of trees where a woodpecker may have eaten, nested, or drummed.